UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

AARDVARK BAILBONDS, LLC                    CIVIL ACTION NO. 09-cv-1419
AND BILL CHARRIER

VERSUS                                     JUDGE HICKS

BELLSOUTH ADVERTISING &                    MAGISTRATE JUDGE HORNSBY
PUBLISHING CORP AND MIKE
STRATTON

## REPORT AND RECOMMENDATION

**Introduction**

Plaintiffs Bill Charrier ("Charrier") and Aardvark Bailbonds, LLC ("Aardvark") filed a petition for damages in the Caddo Parish state court. Doc. 1. Charrier and Aardvark alleged that defendant Mike Stratton ("Stratton"), a salesman for defendant Bellsouth Advertising and Publishing Corporation ("BellSouth"), assured Charrier that he could purchase an advertisement for Aardvark in BellSouth's the Real Yellow Pages despite a debt owed to BellSouth by a former owner of Aardvark. Charrier and Aardvark allege that Stratton's representation was a primary consideration for them to enter into a contract to purchase an advertisement, but Stratton's representation was false, and Stratton and BellSouth later breached the advertising contract.

BellSouth removed the case to this court based on an assertion of diversity jurisdiction under 28 U.S.C. § 1332(a).  Plaintiffs Charrier and Aardvark are Louisiana citizens. Defendant BellSouth is a citizen of Georgia, but Stratton is – like the plaintiffs –  a Louisiana

citizen, so complete diversity is lacking on the face of the petition. BellSouth argued in its notice of removal that Stratton's Louisiana citizenship should be ignored because he was improperly joined to defeat diversity jurisdiction.  Charrier and Aardvark filed a Motion to Remand (Doc. 8) and challenged BellSouth's assertions of improper joinder; they argue that there is no diversity and that the court must remand the case to state court. BellSouth filed a memorandum in opposition. Doc. 10.

**The Improper Joinder Doctrine**

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship.  Those statutes have been interpreted by the courts to require complete diversity; jurisdiction is lacking if any defendant is a citizen of the same state as any plaintiff.  That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal.  To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed.  Bobby Jones Garden Apartments, Inc. v. Suleski, 391 F.2d 172, 176 (5th Cir. 1968).  The Fifth Circuit later adopted the term "improper joinder" to describe the doctrine, though it took care to note that there is no substantive difference between the two terms.  Smallwood v. Illinois Central R.R. Co., 385 F.3d 568 n. 1 (5th Cir. 2004) (en banc).

There are two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.  Only the second way is at issue in this case.  That second test asks whether the defendant has demonstrated there is no reasonable basis for the district

court to predict the plaintiff might be able to recover against the in-state defendant. Smallwood, 385 F.3d at 573; Travis v. Irby, 326 F.3d 644, 646-47 (5th Cir. 2003).

The "no reasonable basis" contest may take place in two different settings. In the first, the defendant challenges the adequacy of the plaintiff's pleadings, without the submission of evidence. The court conducts a Rule 12(b)(6)-type analysis to determine whether the complaint states a claim under state law against the in-state defendant.  Smallwood, 385 F.3d at 573.  Any ambiguities in state law must be resolved in favor of the plaintiff.  Gray v. Beverly Enterprises-Mississippi, Inc., 390 F.3d 400, 405 (5th Cir. 2004).

But merely pleading a valid state law claim, or one whose validity is reasonably arguable, against the resident defendant does not necessarily mean that the joinder of the resident defendant is proper.  The second setting for the "no reasonable basis" contest permits the defendant to challenge the plaintiff's allegations and attempt to demonstrate by summary judgment-type evidence that the plaintiff is unable to prove all of the facts necessary to prevail.  The court has discretion in those circumstance to pierce the pleadings and analyze the improper joinder claim based on that evidence.  Hornbuckle v. State Farm Lloyds, 385 F.3d 538, 542 (5th Cir. 2004).

**Relevant Facts**

The relevant facts in this improper joinder contest are found in the state court petition and a short affidavit from Mr. Stratton that BellSouth filed with its memorandum. BellSouth did not file any other evidence to challenge the allegations in the petition.

Charrier alleges that, prior to acquiring Aardvark, he had a conversation with Stratton, a salesperson for BellSouth. Charrier told Stratton that he was considering purchasing the assets of Aardvark but would not do so if he would not be allowed to advertise Aardvark in the upcoming publication of the Real Yellow Pages. Charrier was concerned because Aardvark owed a debt to BellSouth. Stratton told Charrier that he would be allowed to advertise Aardvark in the Real Yellow Pages if he bought the assets of the company, despite the debt that arose under the previous owner, because the account opened by Charrier would have a new tax identification number.  Petition, ¶¶ 2 -3.

Relying on Stratton's assurance, Charrier purchased the assets of Aardvark in October 2008 for $65,000. ¶ 4. The "primary consideration" in determining the value of the business was the number of calls and clients generated through the advertisement in the Real Yellow Pages telephone directory. ¶ 5.

A few weeks later, in December 2008, Charrier "entered into a contractual agreement" with BellSouth and Stratton to advertise Aardvark in the Real Yellow Pages for the price of $1,180.00, which Charrier paid in full by cashier's check. ¶ 6.  BellSouth negotiated the cashier's check. ¶ 7. About two weeks later, a BellSouth representative informed Charrier that he would not be allowed to advertise Aardvark in the Real Yellow Pages unless he made a down payment of $5,000.00 on the debt incurred by Aaardvark's prior owner, executed a promissory note for the balance of that debt, and payed cash in advance for an ad in the upcoming issue of the Real Yellow Pages. ¶ 8. The directory was circulated without the advertisement  for Aardvark that Charrier purchased. ¶ 9.

Mr. Stratton states in a declaration made pursuant to 28 U.S.C. § 1746 that he, as an account executive for BellSouth, took Charrier's paperwork and payment and submitted it to BellSouth. Affidavit, ¶ ¶ 2-3. During the course of his dealings with Charrier, he "was acting solely within the course of [his] duties for" BellSouth. Stratton testifies that he had no role or authority in determining whether an ad would actually be sold or run in the publication. ¶ 5. His actions and communications were "in accordance with [his] job duties and position as account executive for" BellSouth. ¶ 6.

**Analysis**

Charrier and Aardvark assert in ¶ 10 of the petition that both BellSouth and Stratton breached the contract "they entered into" to advertise Aardvark. One might believe it more likely that Charrier contracted with BellSouth, with Stratton acting as BellSouth's agent, and Stratton's declaration somewhat implies that was the case. BellSouth did not, however, produced evidence to specifically dispute the direct and unambiguous allegation in the petition that Charrier contracted with Stratton and that Stratton breached the contract. Stratton could have, in his declaration,  directly denied that he was a party to any contract with either plaintiff, but he did not. Possible inferences that could be drawn from his testimony are not sufficient to satisfy BellSouth's heavy burden of demonstrating there is no reasonable basis for the court to predict the plaintiffs might be able to recover against Stratton in state court on a breach of contract claim.

Charrier also alleges in the petition that he "relied to his detriment on information provided to him" by Stratton. Petition, ¶ 12. Louisiana law provides that "[a] party may be

obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying." La. Civ. Code art. 1967.  "To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance." Suire v. Lafayette City-Parish Consol. Gov't, 907 So.2d 37, 59 (La. 2005). "[P]roof of a detrimental reliance claim does not require proof of an underlying contract." Id. "The focus of analysis of a detrimental reliance claim is not whether the parties intended to perform, but, instead, whether a representation was made in such a manner that the promisor should have expected the promisee to rely upon it, and whether the promisee so relies to his detriment." Id.

Charrier alleges Stratton represented to him that Charrier would be able to advertise Aardvark in the Real Yellow Pages without having to pay Aardvark's previous owner's debt to BellSouth.  Charrier alleges that he told Stratton that he would not buy Aardvark unless he could get the advertisement, and he relied on Stratton's representation when he bought the assets of Aardvark. Stratton has not directly denied making the representation about the advertisement being available. BellSouth has not satisfied its heavy burden of demonstrating there is no reasonable basis for the court to predict the plaintiffs might be able to recover against Stratton in state court on a detrimental reliance claim. Stratton says in his declaration that he had no actual authority to determine whether an ad would actually be sold, but a lack of actual authority does not preclude the detrimental reliance claim. See also La. Civ. Code

art. 3019 (agent who exceeds his authority may be  personally bound to person with whom he contracts).

BellSouth argues that the plaintiffs have no possible cause of action against Stratton because, as an employee acting solely within the course of his duties for BellSouth, Stratton had no personal duty to Charrier or Aardvark.  BellSouth bases its argument on decisions holding that individual liability cannot be imposed on an employee simply because of the employee's general administrative responsibility for performance of some function of employment, but must arise from his breach of a personal duty towards the plaintiff. They cite cases such as <u>Canter v. Koehring Co.</u>, 283 So. 2d 716 (La. 1973) and <u>In re 1994 Exxon Chemical Fire v. Berry et al.</u>, 558 F.3d 378 (5th Cir. 2009).  These cases are inapplicable here because Charrier and Aardvark allege they were harmed by Stratton's direct, personal misrepresentation to Charrier, not by Strattons passive failure in some general administrative capacity. Had Stratton run a red light and injured Charrier in a car accident, the fact that Stratton was acting in the course of his employment at the time would not insulate him from liability. Similarly, Stratton may be held liable for misrepresentations that he made even though he was selling advertisements for BellSouth at the time.

The court finds, based on the facts presented, that BellSouth did not satisfy its burden of establishing that there is no reasonable basis to predict Charrier and Aardvark could recover from Stratton under state law.  Therefore, Stratton was not improperly joined, and his Louisiana citizenship destroys diversity and this court's subject matter jurisdiction. Charrier and Aardvark's Motion to Remand (Doc. 8) should be granted.

**Attorney's Fees**

Charrier and Aardvark have requested attorney's fees under 28 U.S.C. § 1447(c). The statute provides: "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." These awards are discretionary, however, and "[t]here is no automatic entitlement to an award of attorney's fees." Valdes v. Wal-Mart Stores, Inc. 199 F.3d 290, 292 (5th Cir. 2000).

The Supreme Court has noted that there is no presumption either for or against granting fee awards when remanding under Section 1447(c). Martin v. Franklin Capital Corp., 546 U.S. 132, 137-39 (2005). The standard turns on the "reasonableness of the removal," and "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 141.

State court petitions that name agents or employees as non-diverse defendants are often found removable under the improper joinder doctrine. The time for defense counsel to remove is brief and does not always allow for a full investigation of the facts before the notice must be filed. The improper joinder plea did not succeed in this case, but it is understandable that defense counsel would have attempted to remove a case of this nature. The court finds that the best exercise of its discretion in these circumstances is to not require BellSouth to pay attorney fees.

**Motion to Dismiss or Tranfer Venue**

After the motion to remand was filed, BellSouth filed a motion to dismiss, or in the alternative, transfer venue to the Northern District of Georgia.  BellSouth based the motion to dismiss/transfer on a forum selection clause that is allegedly included in the advertising agreement that gave rise to this case.

The court has determined that it lacks subject-matter jurisdiction over this case, so it need not and may not reach the merits of the dispute regarding the forum selection clause. That issue may be fully litigated before the state court after remand.  This court should simply deny the motion to dismiss/transfer without prejudice and remand the case to the state court.

Accordingly,

IT IS RECOMMENDED that Charrier and Aardvark's Motion to Remand (Doc. 8) be granted and the case be remanded to the 1st Judicial District, Caddo Parish, Louisiana.

IT IS FURTHER RECOMMENDED that BellSouth's Motion to Dismiss or Transfer Venue (Doc. 11) be denied without prejudice.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are

directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 14th day of January, 2010.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE